00_Complaint Docs ALL_1_SEALED Complaint_

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| LOVE ALWAYS SILVERWARE CREATIONS,<br><br>PLAINTIFF,<br><br>V.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>DEFENDANTS. | CASE NO.: 2:26-CV-00391 |

## COMPLAINT

Plaintiff, Love Always Silverware Creations ("LASC" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A ("Defendants"), which use at least the online marketplace accounts identified therein (collectively, the "Defendant Internet Stores") and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338, and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Indiana and in this Judicial District, and the acts and events giving rise to this lawsuit, of which each Defendant stands accused, were undertaken in Indiana and within this Judicial District.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since each Defendant directly targets consumers in Indiana through fully interactive, commercial Internet stores. Each

Defendant is committing tortious acts, engaging in interstate commerce, and wrongfully causing substantial injury in the State of Indiana.

## JOINDER

4. Joinder is proper pursuant to Federal Rules of Civil Procedure 20(a)(2), as there is a logical relationship between and among all Defendants, and Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all Defendants will arise in the action.

5. Plaintiff has filed, as **Exhibit 2** attached hereto, its Schedule A list of Defendant Internet Stores found to be selling Infringing Products. However, the true identities of the Defendants – *i.e.*, the individuals and/or entities operating the Defendant Internet Stores – are not yet known.

6. While it is likely that a significant number of Defendant Internet Stores are operated by the same individual and/or entity, it is not until the third-party marketplaces produce registration data for these stores that Plaintiff is able to discover the true identity or identities of the individuals and/or entities operating the Defendant Internet Stores.

7. Given the likelihood that many, if not all, are operated by the same individual and/or entity, or group acting in concert, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all defendants is proper at this stage as severing the case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be consolidated at a later date.

## INTRODUCTION

8. This action has been filed to combat the copyright infringement activity of Defendants, who trade upon Plaintiff's valuable copyrights by selling and/or offering for sale unauthorized products in connection with Plaintiff's federally registered copyrights.

9. Plaintiff, Love Always Silverware Creations, is the owner of various federally registered copyrights, the registration certificates for which are attached as **Exhibit 1** (hereinafter the "LASC Copyrights"). The LASC Copyrights include: two registrations, covering thirteen (13) images – which are shown in the table below; one registration covering a video recording of Plaintiff's product – a screenshot of which is included in the below table; and a sculptural copyright, covering the "Magnolia Birdhouse" product.

| LASC COPYRIGHTED WORKS | | | | |
|---|---|---|---|---|
| **LSR-01** (VA 2-480-830) | **LSR-02** (VA 2-480-830) | **LSR-03** (VA 2-480-830) | **LSR-04** (VA 2-480-830) | **LSR-05** (VA 2-480-830) |
|  |  |  |  |  |
| **LSR-06** (VA 2-480-830) | **LSR-10.3** (VA 2-480-796) | **LSR-10.5** (VA 2-480-796) | **LSR-13.5** (VA 2-480-796) | **LSR-9.3** (VA 2-480-796) |
|  |  |  |  |  |
| **LSR-9.5** (VA 2-480-796) | **LSR-14.4** (VA 2-480-830) | **LSR-7.1** (VA 2-480-830) | **LSR-Video-01** (PA 2-568-882) | **Sculptural Copyright** (VA 2-482-497) |
|  |  |  |  |  |

10. In an effort to deceptively profit from the LASC Copyrights, Defendants utilize online ecommerce marketplace accounts intentionally designed in look, feeling, and suggestion to give the impression to consumers that they are legitimate websites selling products manufactured by or authorized by LASC, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing unauthorized and infringing products (hereinafter the "Infringing Products").

11. Plaintiff has been and continues to be irreparably damaged through loss of control over the creative content protected by the LASC Copyrights, loss of exclusivity of the LASC Copyrights, as well as harm to Plaintiff's goodwill and reputation, among others, as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

**THE PLAINTIFF**

12. Founded in 2021, as an assumed name, specifically, Janna Barnes d/b/a Love Always Silverware Creations, LASC is a handcrafted jewelry business with its primary office located at 1808 E. Howard Ln., St. George, Utah 84790.

13. LASC was founded with the purpose of honoring and preserving memories of family through the creation of jewelry. It began with the transformation of Janna Barnes' grandmother's silverware into handcrafted jewelry as a way to preserve the heritage of family gatherings and the enduring love they represent. Today, LASC continues to repurpose cherished family heirlooms into meaningful jewelry honoring family histories shared by LASC's clients.

14. LASC sells a variety of handcrafted goods, including but not limited to, rings; necklaces; bracelets; earrings; purse charms and keychains, to name a few, with one of its most popular items being its birdhouse charms (collectively, "LASC Products").

15. The LASC Copyrights cover multiple images and video recordings of the LASC Products, which are used by the Plaintiff in its advertising and promotion of its LASC Products, as well as a sculptural copyright of the LASC Products themselves.

16. LASC owns the exclusive rights to develop, manufacture, display, distribute, sell, promote, and otherwise exploit goods and services of every kind and nature based upon or derived from LASC Copyrights.

17. LASC sells LASC Products via its online storefront on Etsy – https://www.etsy.com/shop/LoveAlwaysSpoonRings – and physically at local markets in Utah.

18. LASC has built a strong reputation on Etsy as a "Star Seller" with over 10,000 sales, a 4.9-star average rating, and consistently positive customer feedback praising the quality, shipping times, communication, and craftsmanship of the pieces created by LASC.

19. LASC has expended significant time, energy, money, and resources into creating and marketing its LASC Products. Each piece is handcrafted with care and is done with great attention to detail. LASC is a small business which has built its reputation and customer base from the ground up. As a result of these efforts, LASC has become recognized in its industry. The recognition and goodwill associated with LASC, the LASC Products, and LASC Copyrights, are of incalculable and inestimable value to the Plaintiff.

20. LASC has made efforts to protect its interests in and to the LASC Copyrights. LASC is the only business and/or individual authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the LASC Copyrights.

21. Plaintiff has not licensed or authorized Defendants to use the LASC Copyrights.

## THE DEFENDANTS

22. Defendants are individuals and/or business entities whose true identities are unknown. Upon information and belief, all Defendants reside in foreign jurisdictions.

23. Defendants, either individually or jointly, operate one or more fully interactive commercial websites and online marketplace accounts utilizing the following marketplace platforms: AliExpress, Amazon, eBay, SHEIN, Shopify, and Walmart (collectively, the "Online Marketplaces").

24. On information and belief, infringers, such as Defendants, operate numerous online marketplace accounts and/or e-commerce stores. As such, it is likely that Defendants may be infringing upon Plaintiff's intellectual property in ways not yet determined.

## THE DEFENDANTS' UNLAWFUL CONDUCT

25. Each Defendant Internet Store is using and/or has used the LASC Copyrights without authorization to do so, in connection with offering for sale, selling, marketing, and distributing Infringing Products, in direct competition with Plaintiff.

26. Specifically, the Defendants are displaying the images protected by the LASC Copyrights on their Infringing Product listings and copying Plaintiff's sculptural copyright in the creation of the Infringing Products. See **Exhibit 3** attached hereto which shows screenshots of the Defendant Internet Stores' unauthorized use of the LASC Copyrights.

27. Defendants have targeted sales to Indiana residents by setting up and operating ecommerce stores that target United States consumers using one or more aliases, offer shipping to the United States, including Indiana, accept payment in U.S. dollars from U.S. consumers, and have sold Infringing Products to residents of Indiana. Confirmation of sales to Indiana by each Defendant can also be found in **Exhibit 3**.

28. Defendants' use of the LASC Copyrights in connection with Infringing Products, which are much lower in quality and cheaper in price, is drawing would-be consumers of Plaintiff's authentic LASC Products away from the Plaintiff and to the Defendant Internet Stores.

29. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $509 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[1] Internet websites like the

---

[1] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

30. As recently addressed in the *New York Times* and by the U.S. Dept. of Homeland Security, and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above-mentioned digital marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[2]

31. On information and belief, Defendants operate in a collective and organized manner, often monitor intellectual property infringement litigation alert websites, are in continuous and active concert with one another, are in frequent communication with each other – utilizing online chat platforms and groups, and use these collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[3] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

32. There are numerous similarities among the Defendant Internet Stores suggesting that they are interrelated, including, but by no means limited to: (1) virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts; (2) identical or nearly identical Infringing Products; and, (3) use of the same text and images.

33. Defendants likely concealed their identities when registering their Defendant Internet Stores by: (1) using fictitious names and physical addresses which are incomplete, contain randomly typed letters, or fail to include cities and other relevant information; (2) using privacy

[2] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

[3] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal and Temporarily Proceed Under A Pseudonym.

services that conceal the owners' identity and contact information; and (3) creating multiple online marketplace accounts on various platforms using several fictitious names and addresses. This is done with the intention of concealing their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

34. Further, ecommerce store operators, like Defendants, typically operate multiple payment processor and merchant accounts, including but not limited to, one or more financial accounts operated through Online Marketplaces and payment processors such as PayPal, Payoneer, Stripe, and Alipay (collectively, "Payment Processors"), and hide behind layers of payment gateways so they can continue operation in spite of any enforcement efforts.

35. Defendants, without any authorization or license, have knowingly and willfully infringed the LASC Copyrights in connection with the advertisement, distribution, offering for sale, and sale of illegal, and infringing products into the United States and Indiana.

36. In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have and will continue to cause irreparable harm to the Plaintiff: infringed upon and copied the LASC Copyrights; created, manufactured, sold, and/or offered to sell Infringing Products; and unfairly and unjustly profited from such activities at the expense of LASC.

37. Unless enjoined, Defendants will continue to cause irreparable harm to LASC.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

38. Plaintiff repleads and incorporates by reference each and every allegation set forth in paragraphs 1-37 as if fully set forth herein.

39. Plaintiff, at all relevant times, has been the holder of the copyright registrations and the exclusive rights of and belonging to Love Always Silverware Creations, including but not limited to the LASC Copyrights.

40. Defendants had access to the LASC Copyrights through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted work without Plaintiff's consent, and engaged in, and continue to engage in acts of widespread infringement.

41. LASC is informed, and thereon alleges, that Defendants further infringed LASC Copyrights by making, or causing to be made, unauthorized reproductions or derivative works of the LASC Copyrights.

42. Defendants, without the permission or consent of the Plaintiff, have used the LASC Copyrights to advertise, promote, and sell online Infringing Products.

43. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution, which constitutes an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 *et seq*.).

44. Further, as a direct result of the Defendants' acts of copyright infringement, Defendants have obtained profits they would not have otherwise realized but for their infringement of Plaintiff's LASC Copyrights. LASC is entitled to disgorgement of Defendants' profits, directly and indirectly, attributable to said infringement.

45. As a result of each Defendant's infringement of Plaintiff's exclusive rights under U.S. Copyright Law, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504.

46. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured monetarily.

47. Plaintiff has no adequate remedy at law. As such, pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing

Plaintiff's LASC Copyrights and ordering that each Defendant destroy all unauthorized and/or infringing copies and reproductions of Plaintiff's copyrighted works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, and all persons and/or entities acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the LASC Copyrights or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized LASC Product, or is not authorized by Plaintiff to be sold in connection with the LASC Copyrights;

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using the LASC Copyrights;

c. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear, or are derived from, the LASC Copyrights; and,

d. further infringing the LASC Copyrights and damaging Plaintiff's goodwill.

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Online Marketplaces and Payment Processors, and any related entities, social media platforms, Internet search engines, web hosts, and domain name registrars, shall disable and suspend all product listings used by Defendants which bear, or are derived from, the LASC Copyrights.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. §501; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages pursuant to 17 U.S.C. §504, at the election of Plaintiff;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7) Any and all other relief that this Court deems just and proper.

Dated: September 3, 2026

Respectfully submitted,

*/s/ Alison K. Carter*

Ann Marie Sullivan
Alison K. Carter

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
a.carter@scip.law

***ATTORNEYS FOR PLAINTIFF***